# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,     )
                                  )
        v.                   )          Criminal Action No. 17-250
                                  )
JAMAL BROOKS,               )
                                  )
           Defendant.        )

## MEMORANDUM OPINION ON PROCEDURAL MATTERS

CONTI, Chief District Judge

## I.    Introduction

A federal grand jury returned a one-count indictment against defendant Jamal Brooks ("Brooks") for possessing a firearm and ammunition while being a convicted felon on August 22, 2017, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 15.) Brooks filed a motion to dismiss[1] arguing, among other things, that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him because his underlying predicate offense, a misdemeanor conviction for carrying a firearm without a license in violation of 18 PA. CONS. STAT. § 6106(a)(2), is not a serious offense. (ECF

---

[1]    On the same day Brooks filed the motion to dismiss, he filed: a motion for discovery (ECF No. 36); a motion to produce evidence that the government intends to use under Federal Rules of Evidence 404(b) and 609 (ECF No. 37); and a motion to suppress evidence and statements (ECF No. 38). The government filed an omnibus response in opposition to Brooks' motions. (ECF No. 43.) Brooks filed a supplement to the motion for discovery and motion to suppress. (ECF No. 44.)

On February 28, 2018, the court held a hearing on Brooks' pretrial motions. The court after hearing from the parties denied without prejudice the motion for discovery and denied as premature the motion to produce evidence. The court ordered the parties to file supplemental briefs addressing, among other things, the applicable standards of proof to the Binderup two-part analysis and whether the rules of evidence apply to the court's consideration of the evidence. The court instructed the parties that it would issue an opinion with respect to those issues and then schedule a continued hearing on the motion to dismiss.

No. 39 at 10.) The Third Circuit Court of Appeals in <u>Binderup v. Attorney General</u>, 836 F.3d 336 (3d Cir. 2016) (en banc), as discussed below, in a plurality opinion, set forth a two-step analysis this court must apply to analyze Brooks' as-applied constitutional attack on § 922(g)(1). That two-step analysis requires the court to consider evidence and legal argument presented by the parties to determine (1) whether § 922(g)(1), a presumptively lawful regulation, burdens Brooks' Second Amendment rights, and, if so, (2) whether § 922(g)(1) satisfies intermediate scrutiny. <u>Binderup</u>, 836 F.3d at 355.

The Third Circuit Court of Appeals in the plurality opinion in <u>Binderup</u> instructed that a defendant must make a "strong" showing to satisfy its burden at the first step and the government must present "meaningful evidence" to satisfy intermediate scrutiny at the second step. <u>Id.</u> at 347, 354. The court of appeals, however, did not explicitly address whether the district court must apply the Federal Rules of Evidence in its consideration of the evidence. The parties submitted supplemental briefing to address those issues. These important issues having been fully briefed are now ripe for disposition by the court.

## II.     **<u>Binderup v. Attorney General</u>, 836 F.3d 336 (3d Cir. 2016) (en banc)**

### A.   **Case background**

The court of appeals in <u>Binderup</u> consolidated two district court civil cases for the purpose of the appeals in which the plaintiffs asserted as-applied constitutional attacks against § 922(g)(1).[2] In one of those cases, the plaintiff Daniel Binderup ("Binderup") had previously

---

[2]      It is the law of the Third Circuit that the two-step <u>Binderup</u> analysis "controls **all** Second Amendment challenges, including as-applied challenges, to § 922(g)(1)." <u>Binderup</u>, 836 F.3d at 356 (emphasis added). The decision heavily relied upon in <u>Binderup</u>, <u>United States v. Marzzarella</u>, 614 F.3d 85 (3d Cir. 2011), was a criminal case in which the defendant attacked the constitutionality of 18 U.S.C. § 922(k) which makes criminal possession of a handgun with obliterated serial numbers. <u>Id.</u> at 339. The court of appeals cited criminal cases in the opinion. <u>Id.</u> The court also refers to the person challenging the constitutionality of § 922(g)(1) as a

pleaded guilty in Pennsylvania state court to corrupting a minor, a misdemeanor subject to a maximum term of imprisonment of five years. Id. at 340 (citing 18 Pa. Cons. Stat. §§ 1104, 6301(a)(1)(I)). Binderup received a sentence of a term of probation of three years and a $300 fine plus court costs and restitution. Id. In the other case, the plaintiff Julio Suarez ("Suarez") had pleaded guilty in Maryland state court to the misdemeanor of unlawfully carrying a handgun without a license. Id. Suarez's crime was subject to a range of imprisonment of thirty days to three years and a fine range of $250.00 to $2,500.00. Id. Binderup and Suarez (the "challengers") were disqualified under Pennsylvania law from possessing firearms in light of their convictions, but they successfully petitioned the Pennsylvania state courts to regain their eligibility. Id.

Binderup and Suarez sought similar relief under federal law and each filed a lawsuit in a district court seeking declaratory and injunctive relief. Binderup, 836 F.3d at 340. They claimed, among other things,[3] that §922(g)(1) was unconstitutional as applied to them. Id. The district courts agreed with the challengers and granted them summary judgment. Id. The district court in Binderup's case held that he "'distinguishe[d] himself from those individuals traditionally disarmed as the result of prior criminal conduct and demonstrate[d] that he poses no greater threat of future violent criminal activity than the average law-abiding citizen.'" Id. (quoting Binderup v. Holder, Civ. Action No. 13-6750, 2014 WL 4764424, at *1 (E.D. Pa. Sept. 25,

_____

"challenger" and not "plaintiff," which could indicate that the court's decision was not limited to civil cases. See e.g., id.at 347 ("No doubt a challenger cannot prevail merely on his say-so."). Additionally, in other circuits, courts in criminal cases have applied two-prong analyses similar to the analysis in Binderup to decide the constitutionality of provisions of § 922(g) as applied to a particular defendant. See e.g., United States v. Chovan, 735 F.3d 1127, 1137 (9th Cir. 2013); United States v. Staten, 666 F.3d 154 (4th Cir. 2011); United States v. Skoien, 614 F.3d 638 (7th Cir. 2010).

[3]     Binderup and Suarez also argued before their respective district courts and to the court of appeals "as a matter of statutory construction that § 922(g)(1)…[does] not apply to their convictions." Binderup, 836 F.3d at 340. The district courts rejected that argument and the court of appeals affirmed that rejection. Id. 341-42.

2014)). The district court did not analyze the fit between the government's interests and § 922(g)(1) under any means-end scrutiny. Id. The district court in Suarez's case granted summary judgment to Suarez because (1) he demonstrated that "'he is no more dangerous than a typical law-abiding citizen[,]'" and (2) § 922(g)(1) failed to satisfy strict scrutiny. Binderup, 836 F.3d at 341 (quoting Suarez v. Holder, 255 F.Supp.3d 573, 586 (M.D. Pa. 2015)). The government appealed both decisions. Id. Separate panels of the court of appeals heard the appeals, which were eventually consolidated by the appellate court for rehearing en banc. Id.

### B.  The varying opinions in Binderup

Fifteen judges on the court of appeals took part in deciding Binderup during the en banc appeal. "Circuit Judges Ambro, Hardiman and Fuentes authored opinions, none of which garnered a precedential majority." Keyes v. Session, 282 F.Supp.3d 858, 867 (M.D. Pa. 2017). As discussed below, six judges agreed with Judge Ambro who wrote the leading opinion that the two-step framework set forth in United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), applied to the challengers' as-applied constitutional attack on § 922(g)(1). There were three different opinions, however, about how the two-part framework applied to the facts of each case.

At one end of the spectrum, Judge Hardiman, joined by four other judges, viewed the protections afforded the challengers under the Second Amendment as more expansive than the other judges. Binderup, 836 F.3d at 363 (J. Hardiman, concurring in part and concurring in the judgments). He opined that if the challenger satisfied his burden at step one to show the underlying predicate offense is "not serious," § 922(g)(1) is unconstitutional as-applied to that challenger. Id. In his view, step two of the analysis is unnecessary. Id. At the other end of the spectrum, however, Judge Fuentes, joined by six other judges, concluded that as-applied challenges to § 922(g)(1) are "unworkable," and, therefore, not permissible. Binderup, 836 F.3d

at 401 (J. Fuentes, concurring in part, dissenting in part, and dissenting from the judgments). His view of the protections afforded the challengers under the Second Amendment was more restrictive. According to Judge Fuentes, a citizen may be lawfully deprived of his Second Amendment rights under § 922(g)(1) once he or she is convicted of an offense that qualifies as a felony offense under the statute, regardless whether the state that convicted the citizen classified the offense as a felony or misdemeanor. Id. at 380-81. The position of Judge Ambro, joined by two other judges, falls somewhere between Judge Hardiman's expansive view of the protections afforded by the Second Amendment and Judge Fuentes' more restrictive view. Judge Ambro applied the facts of each of the challengers' cases to both steps of the Marzzarella framework.

Under those circumstances, this court is left in a quandary without clear guidance about how to apply the Marzzarella framework to decide a very important issue in this case. A majority of the court agreed, however, that as-applied challenges to § 922(g)(1) are permissible, and seven judges agreed that the two-step Marzzarella framework is applicable to as-applied constitutional challenges to § 922(g)(1); indeed, it is the "law of our Circuit." Binderup, 836 F.3d at 356. Thus, to give meaning to that law, both steps of the framework must be applied, and Judge Ambro's application of Marzzarella will be followed here.

### C.  As-applied constitutional attacks on 18 U.S.C. § 922(g)(1)

Judge Ambro in Binderup began his analysis by recognizing the importance of the "'fundamental'" right to bear arms provided by the Second Amendment to the United States Constitution.[4] Binderup, 836 F.3d at 34 (quoting McDonald v. City of Chicago, 561 U.S. 742, 778 (2010)). The right to bear arms, however, "'is not unlimited.'" Binderup, 836 F.3d at 343

---

[4]     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. AMEND. II.

(quoting District of Columbia v. Heller, 554 U.S. 570, 628 (2008)). There are a number of restrictions, e.g., § 922(g)(1)'s ban on felons possessing firearms, that "constrain" the right to bear arms and are "presumptively lawful…because they affect individuals or conduct unprotected by the right to keep and bear arms." Binderup, 836 F.3d at 343. It is the law of the Third Circuit that those restrictions pass constitutional muster if they withstand the appropriate level of means-end scrutiny. Id. at 356.

Because the constitutional challenges before the court of appeals were as-applied challenges, the court was tasked with considering whether the "particular circumstances" of Binderup and Suarez "remove[d] them from the constitutional sweep of § 922(g)(1)." Binderup, 836 F.3d at 346. The court recognized that its decisions in United States v. Marzzarella, 614 F.3d 85 (3d Cir. 2010), and United States v. Barton, 633 F.3d 168 (3d Cir. 2011), guided the approach to as-applied challenges asserted under the Second Amendment. Id. In Marzzarella, the court of appeals "adopted a framework for deciding facial and as-applied Second Amendment challenges." Binderup, 836 F.3d at 339 (citing Marzzarella, 614 F.3d at 85). The two-step approach required the district court to consider (1) "'whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee[,]" and then (2) whether the law survived intermediate scrutiny. Id. at 346 (quoting Marzzarella, 614 F.3d at 89).

In Barton, a criminal case, the court of appeals "held that the prohibition of § 922(g)(1) does not violate the Second Amendment on its face…but…remains subject to as-applied constitutional challenges." Id. (citing Barton, 633 F.3d at 168). With respect to the as-applied constitutional attack asserted by the defendant in Barton, the court held that the defendant did not have a right to bear arms under the Second Amendment because his underlying predicate offense

6

was closely related to violent crime, which disqualified him from exercising his Second Amendment rights. Barton, 633 F.3d at 173. The court of appeals in Barton denied the defendant's as-applied constitutional attack because he failed at step one, i.e., "he presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment." Id.

Judge Ambro in Binderup—joined by six other judges—synthesized Marzzarella and Barton, explaining:

> Read together, Marzzarella and Barton lay out a framework for deciding as-applied challenges to gun regulations. At step one of the Marzzarella decision tree, a challenger must prove, per Barton, that a presumptively lawful regulation burdens his Second Amendment rights. This requires a challenger to clear two hurdles: he must (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, id. at 173, and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class, id. at 174.
>
> No doubt a challenger cannot prevail merely on his say-so. Courts must find the facts to determine whether he has adequately distinguished his circumstances from those of persons historically excluded from Second Amendment protections. Not only is the burden on the challenger to rebut the presumptive lawfulness of the exclusion at Marzzarella's step one, but the challenger's showing must also be strong. That's no small task. And in cases where a statute by its terms only burdens matters (e.g., individuals, conduct, or weapons) outside the scope of the right to arms, it is an impossible one. But if the challenger succeeds at step one, the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny, discussed further below, at step two of the Marzzarella analysis.

Binderup, 836 F.3d at 346-47. In other words, seven judges viewed Marzzarella and Barton as harmonious decisions that guided the court's analysis of the as-applied constitutional attack asserted against § 922(g)(1) by Binderup and Suarez. Id.

**D. Step one of the Marzzarella framework**

    **1. Generally**

Judge Ambro, joined by six other judges, explained that the first step of the <u>Marzzarella</u> framework requires a challenger to "prove…that a presumptively lawful regulation burdens his Second Amendment rights." <u>Id.</u> at 347. "This requires a challenger to clear two hurdles: he must (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member…then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class…." <u>Id.</u>

Judge Ambro explained that the "traditional justification for denying felons the right to arms" is that the government could disarm "unvirtuous citizens," and "unvirtuous citizens" are citizens who have committed serious crimes. <u>Binderup</u>, 836 F.3d at 348. In other words, "persons who have committed serious crimes forfeit the right to possess firearms." <u>Id.</u> at 349. If a challenger has committed a *serious crime* that falls within the ambit of § 922(g)(1), the district court should conclude that he or she is "subject to a firearm ban that is…'presumptively lawful.'" <u>Id.</u> at 348 (quoting <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570, 627 n.26 (2008)). "Serious crimes" includes violent or nonviolent crimes. <u>Id.</u> at 348.

A challenger can show that he is entitled to Second Amendment protection by showing that he did not commit a serious crime. <u>Id.</u> at 348-49. According to Judge Ambro, to determine whether a crime is "serious" the court may consider, among other relevant factors: (1) the statutory maximum penalty of the crime; (2) whether the crime is a misdemeanor; (3) whether use of force is an element of the offense;[5] (4) the sentence actually imposed upon the challenger;

---

[5]     Judge Ambro explained that these first three factors, i.e., "the elements of the offense, the actual sentence, and the state of the law[,]" are "objective indications of seriousness…well within the ambit of judgment exercised daily by judges." <u>Binderup</u>, 836 F.3d at 353 n.5.

and (5) whether there is consensus among the states about the seriousness of the offense. Id. at 351-53.

Judge Ambro, joined by four other judges, instructed that with respect to the first prong of the Marzzarella framework the challenger must make a "**strong**" showing to rebut the "presumptive lawfulness" of his exclusion from Second Amendment protections. Id. at 346 (emphasis added). This means the challenger cannot "prevail merely on his say-so[;]" rather, "Courts must find the facts to determine whether he has adequately distinguished his circumstances from those of persons historically excluded from Second Amendment protections." Id. "[E]vidence of a challenger's rehabilitation or his likelihood of recidivism is not relevant to the step-one analysis." Id. at 356.

## 2. Step one of the Marzzarella framework applied to Binderup and Suarez by Judge Ambro[6]

"Section 922(g)(1) bars the possession of firearms by anyone convicted of 'a crime punishable by imprisonment for a term exceeding one year.'" Binderup, 836 F.3d at 347-48. This includes all felonies and misdemeanors punishable by a term of imprisonment of more than two years. Id. at 348. Each of the crimes committed by Binderup and Suarez were state-law misdemeanors punishable by a term of imprisonment of more than two years. Id. The § 922(g)(1) ban on their possession of firearms was, therefore, presumptively lawful. Id. Under those circumstances, Binderup and Suarez each had a burden to overcome the presumptive lawfulness of § 922(g)(1) by showing that their crimes were not serious crimes, i.e., to distinguish their circumstances from the historically barred class of unvirtuous citizens. Id. Judge Ambro found that Binderup and Suarez each satisfied their burden, explaining the states in which they were

---

[6]     As discussed above, only two other judges joined this portion of Judge Ambro's opinion in which he applied step one of the Marzzarella framework to the facts of Binderup and Suarez.

convicted classified their offenses as misdemeanors, which "traditionally have been…considered less serious than felonies." Binderup, 836 F.3d at 350. He also noted that no element of either crime consisted of violence and each challenger received "a minor sentence by any measure[,]" which is relevant consideration because "severe punishments are typically reserved for serious crimes," and the actual sentence reflects "the sentencing judges' assessment of how minor the violations were." Id. at 352.

Judge Ambro found relevant that there was "no cross-jurisdictional consensus regarding the seriousness of the Challengers' crimes." Binderup, 836 F.3d at 351. The challengers showed that "many states consider their crimes to be non-serious[,]" which made "their showing at step one…that much more compelling." Id. Judge Ambro concluded:

> [T]he Challengers have carried their burden of showing that their misdemeanors were not serious offenses despite their maximum possible punishment. This leads us to conclude that Binderup and Suarez have distinguished their circumstances from those of persons historically excluded from the right to arms. That, in turn, requires the Government to meet some form of heightened scrutiny at the second step of the Marzzarella framework.

Binderup, 836 F.3d at 353.

**E. Step two of the <u>Marzzarella</u> framework explained by Judge Ambro[7]**

**1. Generally**

---

[7]    While Judge Fuentes, joined by six other judges, agreed with Judge Ambro that the Marzzarella framework is the correct framework to as-applied constitutional challenges asserted under the Second Amendment, "Judge Fuentes departs from Judge Ambro's opinion…stating that 'Heller itself tells us that felons are disqualified from exercising their Second Amendment rights' and 'there is no principled basis, at least in this context, for distinguishing' the challengers' misdemeanor convictions from the statute's scope." Keyes, 282 F.Supp.3d at 869 (quoting Binderup, 836 F.3d at 388 (J. Fuentes, concurring in part, dissenting in part, and dissenting from the judgments)). In other words, Judge Fuentes take a more restrictive view and would overrule Burton because he does not believe that means-end scrutiny is required, i.e., "the challengers' misdemeanors are categorically outside of the scope of historical Second Amendment rights." Id.

If the challenger satisfies his burden under the first prong, "the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny." Binderup, 836 F.3d at 347. The court must determine "whether the Government has made a strong enough case for disarming a person found after step one to be eligible to assert an as-applied challenge. This turns in part on the likelihood that the Challengers will commit crimes in the future." Id. at 354 n.7. Judge Ambro explained that intermediate scrutiny applies to this analysis. Id. at 353.

Section 922(g)(1) "is intended to further the government interest of promoting public safety by 'preventing armed mayhem[.]'" Id. (quoting United States v. Skoien, 614 F.3d 638, 650 (7th Cir. 2010) (en banc)). Against that important government interest the district court must consider whether banning the challenger from possessing firearms and ammunition is *substantially* related to that purpose. Id. at 341, 353. In other words, the district court should analyze the "fit between the Challengers' total disarmament and the promotion of public safety." Id. at 355. The government must "'present some meaningful evidence, not mere assertions, to justify its predictive…judgments" about the likelihood that the challenger will commit crimes in the future. Id. at 354. "Parties may use statistics to show that people who commit certain crimes have a high (or low) likelihood of recidivism that warrants (or does not warrant) disarmament, even decades after a conviction." Id.at 355.

## 2. Step two of the <u>Marzzarella</u> framework applied to Binderup and Suarez by Judge Ambro[8]

The government in <u>Binderup</u> relied upon statistical studies to show that it was reasonable to disarm Binderup and Suarez because of their convictions. <u>Binderup</u>, 836 F.3d at 354. Judge Ambro joined by two other judges, however, referred to those studies as being "off-point[.]" <u>Id.</u> Some of the government's studies concerned the risk of recidivism of incarcerated felons but neither Binderup nor Suarez were incarcerated because of their crimes. <u>Id.</u> The government also relied upon a study that showed that criminal defendants who are placed on probation have an increased risk of recidivism in their first year on probation. <u>Id.</u> Judge Ambro declined to rely upon that study because Binderup's offense was 20 years old and Suarez's offense was 26 years old. <u>Id.</u>

---

[8]     Two judges joined this portion of Judge Ambro's opinion in which he applied step two of the <u>Marzzarella</u> framework to the facts of Binderup and Suarez. Judges Fuentes and three other judges reject the application of step two of the <u>Marzzarella</u> framework to the facts of Binderup and Suarez because the misdemeanors at issue were categorically felonies for the purpose of applying § 922(g)(1).

Judge Hardiman, joined by four other judges, authored an opinion concurring in part and concurring in judgment, explaining that "<u>Barton</u> alone provides the standard for an as-applied Second Amendment challenge to a presumptively lawful regulatory measure (like § 922(g)(1)) that denies a core Second Amendment right to a certain class of persons." <u>Binderup</u>, 836 F.3d at 365-66 (J. Hardiman, concurring in part and concurring in the judgments). In other words, "Judge Hardiman and the supporting judges would do away with the second step of the <u>Marzzarella</u> framework altogether[,]" and would find in favor of the challengers on the first step alone. <u>Keyes</u>, 282 F.Supp.3d at 868. Judge Hardiman explained:

> But when, as in these appeals, it comes to an as-applied challenge to a presumptively lawful regulation that entirely bars the challenger from exercising the core Second Amendment right, any resort to means-end scrutiny is inappropriate once it has been determined that the challenger's circumstances distinguish him from the historical justifications supporting the regulation. This is because such laws are categorically invalid as applied to persons entitled to Second Amendment protection—a matter of scope.

<u>Binderup</u>, 836 F.3d at 363 (J. Hardiman, concurring in part and concurring in the judgments).

Although the government's empirical studies in <u>Binderup</u> did not demonstrate the appropriate fit between the disarmament of Binderup and Suarez and the promotion of public safety, Judge Ambro explained:

> Parties may use statistics to show that people who commit certain crimes have a high (or low) likelihood of recidivism that warrants (or does not warrant) disarmament, even decades after a conviction. In these cases, empirical studies could have demonstrated an appropriate fit between the Challengers' total disarmament and the promotion of public safety if they contained reliable statistical evidence that people with the Challengers' backgrounds were more likely to misuse firearms or were otherwise irresponsible or dangerous.

<u>Id.</u>

He concluded that the government did not satisfy its burden to show that disarming people like Binderup and Suarez promoted the responsible use of firearms and public safety, explaining:

> The Challengers' isolated, decades-old, non-violent misdemeanors do not permit the inference that disarming people like them will promote the responsible use of firearms. Nor is there any evidence in the record to show why people like them remain potentially irresponsible after many years of apparently responsible behavior. Without more, there is not a substantial fit between the continuing disarmament of the Challengers and an important government interest. Thus, § 922(g)(1) is unconstitutional as applied to them.

<u>Binderup</u>, 836 F.3d at 356.

**III.    Discussion**

Under the two-step <u>Marzzarella</u> framework, the district court must "find the facts" to determine whether a challenger satisfied step one of the <u>Marzzarella</u> framework, and, if so, determine whether disarming the challenger is substantially fitted to the government's important interest to promote public safety. <u>Binderup</u>, 836 F.3d at 346. This court requested the parties to submit supplemental briefing to address whether the Federal Rules of Evidence apply to the court's consideration of the evidence presented and to explain the standards of proof to be

applied at each step of the framework. Not surprisingly and in light of the dearth of authority on the issues, the parties have taken the positions that best suit their side. The government argues that the clear and convincing standard of proof applies to Brooks' burden at step one and the preponderance of the evidence standard applies to its burden at step two. (ECF No. 55.) Brooks, on the other hand, argues that the preponderance of the evidence applies to his burden at step one and that the court should hold the government to a "heavy burden" at step two. (ECF No. 58 at 12.) The following discussion represents the court's best understanding and interpretation of Binderup and the analysis and procedure that the court will apply to determine whether § 922(g)(1) is unconstitutional as applied to Brooks.

### A. Whether the Federal Rules of Evidence apply to the court's application of the Marzzarella framework

Both steps of the Marzzarella framework require the court to act as the fact finder to determine whether § 922(g)(1) is unconstitutional as applied to Brooks. Neither the parties nor the court located any authority that directly addresses whether the Federal Rules of Evidence apply to the court's consideration of the evidence under the Marzzarella framework. As this motion is at the pretrial stage and concerns the constitutional rights of a defendant, the court finds that an evidentiary hearing on Brooks' motion to dismiss the indictment based upon his as-applied constitutional attack on § 922(g)(2) is akin to an evidentiary hearing with respect to a suppression motion.[9] The court in a hearing on a suppression motion does not apply the Federal Rules of Evidence and may consider hearsay evidence. 3A CHARLES ALAN WRIGHT, ANDREW D. LEIPOLD, PETER J. HENNING, SARAH N. WELLING, FEDERAL PRACTICE & PROCEDURE § 689 (4th

---

[9] Otherwise inadmissible hearsay is also considered the in the following kinds of criminal hearings: bail hearings; extradition proceedings; hearings on motions to suppress; preliminary hearings; sentencing hearings; and probation revocation hearings. HEARINGS AT WHICH OTHERWISE INADMISSIBLE HEARSAY IS ADMISSIBLE, 2 WHARTON'S CRIMINAL EVIDENCE § 6:4 (15th ed.).

ed. 2010) ("The rules of evidence do not apply in a suppression hearing and hearsay is admissible.") (citing United States v. Matlock, 415 U.S. 164, 172-73 (1974); United States v. Raddatz, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.")); Brosiuis v. Warden, 278 F.3d 239, 246 n.4 (3d Cir. 2002) ("Hearsay may be considered in a suppression hearing in a federal court."). The Supreme Court of the United States in Raddatz noted that while "the resolution of a suppression motion can and often does determine the outcome of the case[,]…the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself." Raddatz, 447 U.S. at 679. The Court held that under those circumstances, a "court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." Id. Similarly, here, although the outcome of the court's hearing on Brooks' as-applied attack on § 922(g)(1) may be outcome determinative if the court agrees with him, the hearing is not of the same magnitude as a trial during which Brooks' guilt or innocence is determined. Under those circumstances, the Federal Rules of Evidence will not be formally applied and hearsay evidence may be considered.[10]

---

[10]     Brooks argues that at least at step two, if extrinsic evidence of his wrongdoing is considered, the court must apply the Federal Rules of Evidence with respect to that evidence. The pretrial hearing held on Brooks' motion to dismiss the indictment, as discussed, is akin to an evidentiary hearing on a motion to suppress, which also concerns important constitutional rights. The Federal Rules of Evidence do not apply to those kinds of pretrial hearings that are of a lesser magnitude than a trial to determine a defendant's guilt or innocence. Raddatz, 447 U.S. at 677 ("We conclude that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself."). Under those circumstances, although if Brooks satisfies step one, the court at the hearing in this matter may consider extrinsic evidence of Brooks' wrongdoing at step two, it will not strictly apply the Federal Rules of Evidence.

This approach is supported by the court of appeals' consideration in <u>Binderup</u> of the empirical studies offered by the government[11] and Federal Rule of Evidence 1101(d), which provides that the Rules of Evidence—"except for those on privilege"—do not apply to "a preliminary examination in a criminal case." FED. R. EVID. 1101(d). The parties should be mindful, however, that the court—like any other finder of fact—will assess the evidence presented for its reliability and may discount evidence it finds to be less reliable.[12] <u>United States v. Tussell</u>, 441 F.Supp. 1092, 1096 (M.D. Pa. 1977) ("The testimony heard often contained elements of hearsay which might have been excluded at trial but which I allowed for whatever probative value that testimony had. This is permissible at a suppression hearing without regard to the matter in issue, although the court remains obligated to weigh the evidence and discount that which is less reliable."); <u>United States v. Low</u>, 257 F.Supp. 606, 610 n.2 (W.D. Pa. 1966) ("Hearsay evidence derived from an informer is competent evidence on which to show probable cause for an arrest, though the weight to be given it is a matter for the sound discretion of the court.").

### B. The analysis and standard of proof to be applied at step one of the <u>Marzzarella</u> framework

In accordance with <u>Binderup</u>, the court at step one of the <u>Marzzarella</u> analysis will:

---

[11]     Brooks in his supplemental brief acknowledges: "The <u>Binderup</u> plurality's consideration of these studies suggests that hearsay addressing the legislative fit inquiry is admissible in this context." (ECF No. 55 at 12 n.6.) The government argues that—like in a suppression hearing—the court may consider hearsay evidence in deciding Brooks' as-applied attack on § 922(g)(1). (ECF No. 54 at 9.)

[12]     For example, the court of appeals in <u>Binderup</u> considered the empirical evidence offered by the government, which appears to be hearsay evidence, but did not find the studies to be "reliable statistical evidence that people with the Challengers' backgrounds were more likely to misuse firearms or were otherwise irresponsible or dangerous." <u>Binderup</u>, 836 F.3d at 355.

(1) place the burden of proof upon Brooks, i.e., the challenger, to rebut the presumptive lawfulness of his exclusion from enjoying Second Amendment rights under § 922(g)(1), which "is no small task" <u>Binderup</u>, 836 F.3d at 347;

(2) "find the facts to determine whether he has adequately distinguished his circumstances from those of persons historically excluded from Second Amendment protections," i.e., whether Brooks' underlying predicate offense is a "serious crime[,]" <u>id.</u>;

(3) consider the following to determine whether Brooks has shown his underlying predicate offense was not a "serious crime:" (1) the statutory maximum penalty of the crime; (2) whether the crime is a misdemeanor; (3) whether use of force is an element of the offense; (4) the sentence actually imposed upon the challenger; and (5) whether there is consensus among the states about the seriousness of the offense, <u>id.</u> at 351-53; and

(4) require Brooks to make a "strong" showing that his underlying predicate offense was not a serious crime and not rely upon his "say-so."

Based upon the foregoing, the court has two main tasks at step one: (1) to find facts about Brooks' underlying predicate offense, and (2) to determine whether in light of those facts, the underlying predicate offense is a serious crime. The court as the finder of fact "determines the credibility of witnesses and may accept or reject any or all of a witness' testimony." <u>United States v. Woodson</u>, Crim. No.15-88, 2017 WL 44859, at *2 (W.D. Pa. Jan. 4, 2017) (citing <u>United States v. Howard</u>, 787 F.Supp.2d 330, 331-32 (D.N.J. 2011)). As the court in <u>Woodson</u> instructed:

The court judges credibility by considering a number of factors, including the witness' demeanor and manner on the stand, his ability to accurately recollect the matters at hand, the manner in which he may be affected by the outcome, the extent to which his testimony is either supported or contradicted by other evidence and testimony in the case, and whether his testimony withstands the "common sense test of reason and logic." <u>Id.</u>; <u>see also</u> <u>United States v. Murphy</u>, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005). A witness should not be found more or less credible simply because he is a law enforcement officer. 787 F. Supp. 2d at 332.

<u>Id.</u>

With respect to the court's second task at step one, Brooks' showing that his underlying predicate offense was not a serious crime must be "strong." The court finds that this "strong" burden of proof requires something more than the preponderance of the evidence but something less than the clear and convincing standard requested by the government.[13] Binderup was a civil case, in which the preponderance of the evidence standard most commonly applies. Brooks' burden at step one, however, is to overcome the *presumptive lawfulness* of § 922(g)(1). That "not so easy" task requires something more than a preponderance of the evidence; indeed, it requires a *strong* showing that his underlying predicate offense was not a serious crime. Binderup, 836 F.3d at 366. A defendant cannot rely upon his say-so to satisfy this burden. The court will consider the factors Judge Ambro determined to be relevant to the analysis, among any relevant consideration presented by Brooks. The court will also look to the kinds of evidence that Judge Ambro found sufficient in Binderup with respect to Binderup and Suarez to determine whether Brooks satisfied his burden to distinguish himself from the class of persons historically barred from possessing firearms in accordance with the Second Amendment.

**C. The analysis and standard of proof to be applied at step two of the <u>Marzzarella</u> framework**

**1. The court's two-part approach to step two**

If Brooks makes a strong showing that his underlying predicate offense is not a serious crime, "the burden shifts to the Government to demonstrate that the…[law] satisfies" intermediate scrutiny. Binderup, 836 F.3d at 347, 356. The court understands its task at this step

---

[13]    The government argues that the clear and convincing burden of proof applies to Brooks' burden at step one. The court in Binderup, however, would have been familiar with the clear and convincing burden of proof but did not apply it; rather, the court explicitly stated that the showing must be "strong."

of the <u>Marzzarella</u> framework as twofold: [14] (1) the court—as in the first step of the framework—must make factual determinations based upon the evidence presented by the government; and (2) consider that evidence to determine whether the government has made a "strong enough" showing to satisfy intermediate scrutiny. <u>Binderup</u>, 836 F.3d at 354 n.7. Intermediate scrutiny in this context requires the government to show that § 922(g)(1), i.e., the prohibition on Brooks' Second Amendment rights to bear firearms, is *substantially related* to its "important and compelling interest" "of promoting public safety by 'preventing armed mayhem[.]'" <u>Id.</u> at 353 (quoting <u>Skoein</u>, 614 F.3d at 642). The Third Circuit Court of Appeals in <u>Marzzarella</u> relied upon the application of intermediate scrutiny under the First Amendment to articulate how intermediate scrutiny applies under the Second Amendment. <u>Marzzarella</u>, 614 F.3d at 97-98. The court explained that although "intermediate scrutiny is articulated in several different forms…[the terminology used shares] the same substantive requirements." <u>Id.</u> Intermediate scrutiny "require[s] the asserted governmental end to be more than just legitimate, either 'significant,' 'substantial,' or 'important.'" <u>Id.</u> (citing <u>Turner Broad. Sys., Inc. v. F.C.C.</u>, 512 U.S. 622, 627 (1994); <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 785 (1989)). "[T]he fit

---

[14]    The Ninth Circuit Court of Appeals described the two-parts of a mean-end scrutiny analysis in <u>Smith v. University of Washington</u>, 392 F.3d 367, 371 (9th Cir. 2004). The district court must first make findings of fact, and then make "conclusions regarding the sufficiency of the facts" to determine whether the appropriate level of scrutiny is satisfied. <u>Id.</u>

In other words, whether the government's means to accomplish its interest satisfies the appropriate level of scrutiny in a case is a mixed question of law and fact. <u>Hunter ex rel. Brandt v. Regents of Univ. of California</u>, 190 F.3d 1061, 1063 (9th Cir. 1999) ("The district court's conclusions regarding the sufficiency of those facts in meeting strict scrutiny is a mixed question of law and fact which we review de novo."); <u>Lamprecht v. F.C.C.</u>, 958 F.2d 382, 392 n.3 (D.C. Cir. 1992) ("Of course, the point about which we disagree with our colleague and with Congress—whether sex-based preferences will advance 'substantially' the goal of increased programming diversity for intermediate scrutiny purposes—is a mixed question of law and fact, neither purely constitutional nor purely empirical.").

between the challenged regulation and the asserted objective…[must] be reasonable, not perfect." Id. (citing Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 556 (2001); Bd. of Trs. Of State Univ. of N.Y. v. Fox, 492 U.S. 469. 480 (1989)). "The regulation need not be the least restrictive means of serving the interest[.]" Id. (citing Turner Broad. Sys., 512 U.S. at 662; Ward, 491 U.S. at 798). The regulation, however, "may not burden [protected conduct]…more than is reasonably necessary." Id. (citing Turner Broad. Sys., 512 U.S. at 662; Ward, 491 U.S. at 800).

As Judge Ambro and the two other judges acknowledged in Binderup, the government's "interest of promoting public safety by 'preventing armed mayhem,'…is both important and compelling." Binderup, 836 F.3d at 353 (quoting Skoien, 614 F.3d at 642). The government must show that banning "people like" Brooks from possessing a firearm promotes public safety. Id. at 353-54. This task in part involves assessing the challenger's risk of recidivism. Binderup, 836 F.3d at 354 n.7. The government may satisfy this burden by introducing specific evidence about Brooks, e.g., the passage of time since his last conviction, and empirical evidence about people like Brooks. Id.; see also, Keyes, 282 F.Supp.3d at 876; Gurten v. Sessions, Civ. Action No. 17-1841, 2018 WL 278644, at *14 (E.D. Pa. Jan. 3, 2018) (considering under step two the challenger's ability to control his temper with his handgun, that twelve years passed since he committed an offense, and that he physically assaulted his domestic partner and used an unlicensed firearm to threaten others); Simpson v. Sessions, Civ. Action No. 2017 WL 1910141, at *7 (E.D. Pa. May 10, 2017) (in an as-applied attack to § 922(g)(4) considering the challenger's lack of a record of responsible firearms usage and his continuing mental health treatment); Zedonis v. Lynch, 233 F.Supp.3d 417, 432 (M.D. Pa. 2017) (recognizing that the challenger's assertions that he had not committed any misdemeanors or felonies within the past ten years and

the government's argument that the challenger was a recidivist who recently committed summary offenses were considerations under step two of the <u>Marzzarella</u> framework).

Brooks argues, however, that specific evidence about a defendant's "rehabilitation or lack thereof" is not relevant to the inquiry at step two; rather, "the only additional fact about a challenger and his prior conviction that…may be considered at step two is the length of time that has passed since he committed his disqualifying offense." (ECF No. 58 at 13.) Judges Ambro and Fuentes disagreed about this very issue in their opinions in <u>Binderup</u>. The court in <u>Keyes</u> explained:

> Both [Judges Ambro and Fuentes] agreed on the general premise of intermediate scrutiny—the Government bears the burden of proof to demonstrate that the challenged law involves an important government interest and that there is a "reasonable fit" between that interest and the challenged law. <u>Binderup</u>, 836 F.3d at 354, 399. Judge Ambro interprets this to require the Government to adduce evidence explaining why banning people in the Plaintiff's position from firearm possession is a reasonable means to further its governmental interest. <u>Id.</u>, at 354–355. To this end, Judge Ambro found that the Government's reliance on general statistical studies that felons are more likely to commit violent crimes was misplaced. <u>Id.</u> Instead, the Government needed to present reliable evidence "that people with the Challengers' backgrounds were more likely to misuse firearms or were otherwise irresponsible or dangerous." <u>Id.</u>, at 355.

> Judge Fuentes takes issue with this analysis, stating that "Judge Ambro's level of specificity is problematic." <u>Id.</u>, at 396. Judge Fuentes concludes that the Government satisfied its burden that the law is a "reasonable fit" to its important interest in public safety because it pointed to studies that explore the link between past criminal conduct and future gun violence, even without any link to the challenger's specific characteristics. <u>Id.</u>, at 400.

<u>Keyes</u>, 282 F.Supp.3d at 876. The court in <u>Keyes</u>—which was considering an as-applied attack to 18 U.S.C. § 922(g)(4) prohibiting the possession of a firearm by anyone previously committed to a mental institution—determined that Judge Ambro's approach was the better approach. <u>Id.</u> The court explained that Judge Fuentes "high level analysis of intermediate scrutiny[,]" which

did not take into account specific characteristics of the challengers, is problematic because "it would effectively foreclose all as-applied challenges." Id. The court explained:

> [G]enerally, the Government does have an important interest at play and that the dispossession of certain groups of people are reasonable to pursue that interest. To allow the Government to defeat an as-applied challenge by demonstrating that the statute was a reasonable fit to its important interest in general would mean that the challengers' efforts to distinguish themselves from the overall class are rendered futile. In essence, without considering the challengers' specific characteristics, the second step of the Marzzarella framework is the same in both facial and as-applied challenge, rendering the first prong in as-applied challenges superfluous and done in vain.

Keyes, 282 F. Supp. 3d at 876–77. Judge Fuentes—and three other judges—concluded that as-applied challengers to § 922(g)(1) were not permissible. Id. at 877 (citing Binderup, 836 F.3d at 401 (J. Fuentes, concurring in part, dissenting in part, and dissenting from the judgments)). He explained that Congress previously had a procedure under 18 U.S.C. § 925(c) by which felons barred from possessing firearms could apply to the Attorney General to restore their Second Amendment rights because their circumstances showed they were not likely to pose a danger to public safety. Binderup, 836 F.3d at 402. Congress defunded the "unworkable" program because a determination about whether a particular felon posed a danger to public safety "was *too prone to error*." Id. (emphasis in original). Judge Fuentes argued that the § 925(c) procedure, which considered the circumstances of a particular felon, was an in effect an as-applied challenge to § 922(g)(1), which Congress found to be unworkable. According to Judge Fuentes, that determination by Congress to foreclose the § 925(c) as-applied challenges to § 922(g)(1) should have a "profound impact" on the court's consideration of the as-applied challenges of Binderup and Suarez. Id.

Judge Fuentes countered any overbreadth arguments by recognizing the "numerous safety valves" available to disarmed felons, i.e., petitioning the state legislature to amend the law on the

underlying predicate offense, having the underlying predicate offense expunged, set aside, or pardoned, petitioning Congress for redress, and the "offense-specific carve-outs from § 922(g)(1)." Id. Judge Fuentes found that consideration of the particular circumstances of a challenger is "administratively unworkable." Id. at 407. He explained that consideration of a challenger's specific circumstances invites a collateral attack on the underlying predicate offense, "places an extraordinary administrative burden on district courts handling criminal prosecutions under § 922(g)(1)[,]" and creates potential for other constitutional issues. Id.

This court, like the court in Keyes, is not able to follow Judge Fuentes' view on this issue and will consider evidence about Brooks' particular circumstances to determine whether the § 922(g)(1) charge asserted against him should be dismissed. First, a majority of the court agreed that as-applied challenges to § 922(g)(1) were permissible, and seven judges approved of the two-step Marzzarella framework for as-applied challenges to § 922(g)(1). Second, with respect to the burden placed on the district courts to predict the danger a challenger poses to the public, that prediction is often made by district courts. United States v. Perry, 788 F.2d 100, 114 (3d Cir. 1986) (explaining that under 18 U.S.C. § 3142 the district court must make a "dangerousness determination" involving "a prediction of the detainee's likely future behavior"). As Judge Ambro explained:

> [T]he criteria we use to assess the seriousness of a misdemeanor subject to § 922(g)(1)—the elements of the offense, the actual sentence, and the state of the law—are easily administrable. These objective indications of seriousness are well within the ambit of judgment exercised daily by judges. Courts are also well suited to the task of identifying serious crimes in the Second Amendment context, as in other constitutional contexts the Judicial Branch is charged with discerning "objective criteria reflecting the seriousness with which society regards [an] offense."

Id. at 354 n.5. Under those circumstances, the court will follow the lead of Judge Ambro and consider evidence of Brooks' particular circumstances as well as any empirical evidence about

persons like him to determine whether the government was able to satisfy its burden to show that disarming him under § 922(g)(1) is substantially related to its important interest of promoting public safety. The court is not convinced by Brooks' argument that the court's consideration of evidence is limited to empirical studies and the passage of time since a defendant committed his underlying predicate offense.

Brooks argues that if the court permits the government at step two to introduce extrinsic evidence of his wrongdoing, it must provide him the right to confront his accusers and require the elements of a crime be proven beyond a reasonable doubt. (ECF No. 58 at 15.) With respect to providing Brooks the right to confront his accusers, the right of confrontation "pertains only to adverse witnesses offering testimony at trial." United States v. Soriano-Jarquin, 492 F.3d 495, 504 (4th Cir. 2007); United States v. Boyce, 797 F.3d 691, 693 (8th Cir. 1986) (explaining "the right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial"). Any evidence introduced about Brooks' wrongdoing at step two is not being used by the court to convict him of a crime and the court may consider evidence that does not rise to the level of criminal activity. Under those circumstances, the court will not require the government to prove any wrongdoing by Brooks "beyond a reasonable doubt." Based upon the foregoing, Brooks' due process rights[15] will not be violated by the procedures set forth in this opinion to decide his as-applied attack on § 922(g)(1).

---

[15] Brooks in his supplemental reply brief argues that he must be afforded the opportunity to confront his accusers, the government must prove his wrongdoing beyond a reasonable doubt, and the Federal Rules of Evidence must apply if the court permits the government to introduce evidence particular to him at step two. (ECF No. 58 at 14-15.) To the extent Brooks is arguing that the procedures set forth in this opinion violate his procedural due process rights, the court does not agree. The court must weigh the following three factors to determine whether a hearing deprived a defendant of his procedural due process rights:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and

## IV.    Conclusion

The court will apply the two-part <u>Marzzarella</u> framework to Brooks' as-applied challenge to 18 U.S.C. § 922(g)(1). At step one, the court will find the facts and determine whether Brooks satisfied his burden to make a strong showing that his underlying predicate offense was not a serious offense, i.e., his circumstances are distinguished from the class of persons historically barred from exercising their Second Amendment rights and he can overcome the presumptive lawfulness of § 922(g)(1). If Brooks satisfies his burden, the burden will shift under step two to the government.

At step two, the court will find the facts and determine whether the government met its burden to show that prohibiting persons like Brooks from bearing arms under § 922(g)(1) is substantially related to its important interest of promoting public safety. If Brooks satisfies step one, the government's evidence at step two must be meaningful and particular to him to strip him

---

the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail

<u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976). Here, although the outcome of the hearing has the potential to be outcome determinative, Brooks' interest in the evidentiary hearing under <u>Marzzarella</u> is of a lesser magnitude than a trial during which he is afforded the right to confront his accusers, the government must prove its case beyond a reasonable doubt, and the Federal Rules of Evidence apply. <u>Raddatz</u>, 447 U.S. at 679. The risk of erroneous deprivation is not high because the court is the finder of fact at other kinds of pretrial hearings and Brooks will have the opportunity to present evidence in support of his position. Although the court will not apply the Federal Rules of Evidence to the hearing, it will take into account the quality of evidence presented by the government, which must be meaningful evidence. There is value to the safeguards proposed by Brooks, but those safeguards are guaranteed at trial and not in pretrial hearings. <u>Id.</u> Lastly, granting Brooks' request to order those safeguards would turn the hearing into a trial, which would burden the court and parties. Weighing these factors, the court finds that the procedures set forth in this opinion afford Brooks adequate due process.

of his Second Amendment rights. The court will not strictly apply the Federal Rule of Evidence

to its consideration of the evidence in this case and may consider hearsay evidence.

BY THE COURT,

Dated: May 24, 2018                                    /s/ JOY FLOWERS CONTI
                                                       Joy Flowers Conti
                                                       Chief United States District Judge