# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) <br> ) <br> ) **Criminal No. 17-250** <br> ) |
| v. | ) <br> ) |
| **JAMAL BROOKS,** | ) <br> ) |
| Defendant. | ) <br> ) <br> ) <br> ) |

# MEMORANDUM OPINION

**CONTI, Chief District Judge**

## I. Introduction

Defendant Jamal Brooks ("Brooks") filed a motion for release from custody, pursuant to 18 U.S.C. § 3164(c). (ECF No. 76.) The government filed a response in opposition to the motion arguing that although the pretrial motions in this case delayed the resolution of this case, Brooks "is a danger to the community and no condition or combination of conditions will reasonably assure the safety of the community" if Brooks is released from pretrial detention. (ECF No. 78 ¶¶ 2, 3.)

After a *de novo* review of the parties' submissions and the evidence produced in this case, the court agrees with the government. First, the court's review of the record in this case, including the findings of fact and conclusions of law dated September 19, 2018, and the transcripts of the hearing held on June 25, 2018, and July 10, 2018, show that there are no conditions or combination of conditions that can reasonably assure the safety of the community in light of Brooks' history of gun violence and access to firearms. Second, the delay in this case

was largely caused by the complexity of Brooks' motion to dismiss the indictment, which raised novel and complicated issues, and required the court and parties to spend considerable time and effort to resolve. The motion for release from custody will, therefore, be denied.

## II. Background

### A. Procedural History

On August 22, 2017, a criminal complaint was filed against Brooks charging him with possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). (ECF No. 1 at 1.) On the same day, he was arrested and appeared before a magistrate judge. (ECF No. 2.) On August 28, 2017, defendant waived his right to a detention hearing. (ECF No. 7.) On September 1, 2017, Brooks filed a motion for a detention hearing, which was granted. (ECF Nos. 10, 11.) On September 7, 2017, a magistrate judge held a detention hearing. (ECF No. 13.) The magistrate judge entered an order of detention pending trial because the government proved by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (ECF No. 14 at 2.) The court found that the weight of evidence against Brooks was strong and he had a history of violence or use of weapons. (Id.)

On September 19, 2017, a grand jury returned a one-count indictment charging Brooks with possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). (ECF No. 15.) On September 27, 2017, Brooks filed a motion for extension of time to file pretrial motions. (ECF No. 21.) On November 11, 2017, Brooks filed a motion for pretrial discovery. (ECF No. 27.) On November 21, 2017, the government filed its response in opposition. (ECF No. 32.) On November 30, 2017, Brooks filed a motion to withdraw the motion for pretrial discovery, (ECF No. 34), which was granted by the court, (ECF No. 35).

On December 29, 2017, Brooks filed a: (1) motion for discovery (ECF No. 36); (2) motion to produce evidence (ECF No. 37); (3) motion to suppress evidence and statements (ECF No. 38); and (4) motion to dismiss for lack of jurisdiction (ECF No. 39). The court set a pretrial motions hearing for February 20, 2018. (ECF No. 40.) On January 18, 2018, Brooks filed a motion to continue the hearing, (ECF No. 41), which the court granted, (ECF No. 42). The court scheduled the hearing for February 26, 2018. (ECF No. 42.) On February 12, 2018, the government filed an omnibus response to Brooks' pretrial motions. (ECF No. 43.)

On February 23, 2018, Brooks filed a supplement to his motion to suppress evidence, in which he raised additional issues. (ECF No. 44.) On February 24, 2018, the government filed a motion to continue the pretrial motions hearing, arguing that it needed additional time to prepare to address the new issues raised in Brooks' supplement. (ECF No. 45.) On the same day, Brooks filed a response in opposition. (ECF No. 46.) At the hearing held on February 26, 2018, the court granted the motion to continue the hearing with respect to the motion to suppress, but denied the motion to the extent it addressed the motion for discovery, motion to produce evidence, and motion to dismiss. (H.T. 2/26/2018 (ECF No. 48) at 2-4.) The court denied without prejudice the motion for discovery and denied as premature the motion to produce evidence. (Id. at 5, 9-10.) The court denied the motion to dismiss with respect to the argument that 18 U.S.C. § 922(g)(1) is unconstitutional because it exceeds Congress' authority under the Commerce Clause. (Id. at 10-11.) The court, however, determined it required supplemental briefing from the parties with respect to the Third Circuit Court of Appeals' fractured decision in Binderup v. Attorney General, 836 F.3d 336 (3d Cir. 2016), upon which Brooks based his constitutional attack on § 922(g)(1) as applied to him.

On March 6, 2018, the government requested a thirty-day extension to file its supplemental briefing because it sought "input from the Department of Justice" on the important issues raised by Brooks' motion to dismiss. (ECF No. 49 ¶¶ 4-5.) Brooks opposed the government's motion. (ECF No. 50.) The court "[i]n light of the significance of the issues to be addressed by the parties and the court" granted the government's motion. (ECF No. 51.) On April 11, 2018, the parties filed their supplemental briefing. (ECF Nos. 54, 55.) On May 24, 2018, the court issued its memorandum opinion on procedural matters. (ECF No. 60.)

On May 25, 2018, the court held a scheduling conference and scheduled the continued hearing on the motion to dismiss for June 25, 2018. On June 11, 2018, Brooks filed a second supplemental brief. (ECF No. 62.) On June 25, 2018, the court held the continued motion hearing on the motion to dismiss. The hearing was continued until July 10, 2018, on which date the hearing was concluded. On August 20, 2018, the parties filed their proposed findings of fact and conclusions of law. (ECF Nos. 72, 73.) On September 19, 2018, the court issued its findings of fact and conclusions of law and denied the motion to dismiss with respect to Brooks' constitutional attack on § 922(g)(1) as applied to him. (ECF Nos. 72, 73.)

On October 8, 2018, Brooks filed his motion for release from custody. (ECF No. 76.) On October 11, 2018, the government filed its response in opposition. (ECF No. 78.) On October 12, 2018, the court held a hearing on the motion for release from custody and the motion to suppress. The court heard argument from the parties and took the motion for release from custody under advisement.

### B. Factual Background

The factual background in this case is derived from the hearing the court held on the motion to dismiss the indictment, at which the government presented witnesses and both parties

entered exhibits into evidence. The court also reviewed the pretrial services report dated August 23, 2017, and the transcript of the detention hearing before the magistrate judge. The evidence presented during the September 8, 2017 detention hearing before the magistrate judge is largely duplicative of the evidence presented to the undersigned judge during the hearing on the motion to dismiss.

Brooks has familial support in the area of Pittsburgh, Pennsylvania, where he has lived for his entire life. (Pretrial Servs. Report at 1-2.) He has regular contact with his mother, occasional contact with his brother, and his son (age 8) and daughter (age 4) live with him and his girlfriend of nine years, R'Vaenita Squires ("Squires"). (Id. at 1-2.) Brooks presented his mother as a possible custodian, and the probation officer reported to the magistrate judge that her home was a suitable placement for Brooks. (Id. at 2.) Brooks does not possess a valid United States passport, and he never traveled outside the United States. (Id.) From 2014 until 2015, Brooks was employed by Chelsea Building Products. (Id.) Squires "takes care of the expenses" for the family. (Id.) Brooks occasionally drinks alcohol and uses cannabinoids. (Id. at 3.)

Brooks at the age of fifteen was adjudicated delinquent for possession of a controlled substance and possession of marijuana. (Pretrial Servs. Report at 3.) At the age of twenty he pleaded guilty to disorderly conduct (Id.) At the age of twenty-three he pleaded guilty to firearm not to be carried without a license, a misdemeanor in the first degree, false identification to law enforcement officer, retail theft, and conspiracy to commit retail theft. (Id. at 4.) Brooks was not convicted of any other crimes at the time he committed the offense charged in the indictment in this case. (Id. at 1-4.)

In the hearing on the motion to dismiss the indictment, evidence was adduced about three incidents involving gun violence. The first incident occurred in the early morning hours of April

5

19, 2015, when Brooks confronted Felicia Johnson ("Johnson"), his neighbor, with respect to a parking dispute. Brooks was unhappy with Johnson's response and pointed a silver pistol at her head and with a black pistol fired multiple shots into a car driven by Johnson's friend. This evidence was based upon the testimony of Johnson and her friend, Joi Clark ("Clark"). Johnson and Clark similarly testified about a neighbor pointing a gun at Johnson and then shooting Clark's vehicle. Johnson testified that her neighbor, with whom she had conversations "a couple times" about parking, was the actor, and Clark testified that she was told the actor was Johnson's neighbor. (H.T. 6/25/2018 (ECF No. 65) at 47.) Johnson—when asked to identify the neighbor in court—told the counsel for the government, who was standing between defense counsel table and the witness stand: "You are standing in front of him." (H.T. 6/25/2018 (ECF No. 65) at 46.) Johnson then explained that Brooks looked different than he did on the day of the altercation, i.e., "[h]e just look[ed] different with the hair and the beard." (Id. at 46-47.) Johnson testified that she told the police that the actor lived next door to her and that the police went to the neighbor's home to search for him. (Id. at 50-51.) According to Johnson, the neighbor was not at his home, the neighbor's girlfriend "came out of that residence," and the neighbor's large white truck, which was parked on the street prior to the altercation, was gone. (Id. at 51-53.)

Pittsburgh Police Officer Aaron Obsenica ("Obsenica") was the lead reporting officer on scene at Johnson's home. (H.T. 6/25/2018 (ECF No. 65) at 53-52, 57.) Obsenica testified that a woman who identified herself as Brooks' girlfriend, i.e., Squires, exited the house identified by Johnson.[1] (Id. at 55-56.) Squires told officers that Brooks "fled" in a "White Chevy Tahoe." (Id.

---

[1] Obsenica testified that Johnson "stated the neighbor, Jamal Brooks, had fired three shots into Joi Clark's vehicle and that he may have went back into 5405 Columbo Street…." (H.T. 6/25/2018 (ECF No. 65) at 56.)

6

at 56.) "A few minutes" after searching Brooks' home, police officers located Brooks' white Chevy Tahoe "[a] couple blocks" from Johnson's home. (Id. at 58-59.)

Obsenica filed a complaint against Brooks charging him with "two counts of firearms not to be carried without a license" and aggravated assault and criminal mischief. (H.T. 6/25/2018 (ECF No. 65 at 60-62.) Clark testified against Brooks at his preliminary hearing. (Id. at 34.) The charges against Brooks were held for trial, but were eventually nolle prossed because Obsenica was "unsuccessful in having Ms. Johnson and Ms. Clark attend court proceedings." (Id. at 63.) Johnson testified that she did not appear in court to testify against Brooks because she was "scared….They were practically still living there." (Id. at 52.)

The court in its findings of fact and conclusions of law dated September 19, 2018, discussed two other incidents of gun violence:

- On May, 5, 2015, Brooks robbed Malcom Hill ("Hill") after Hill finished performing at Club Taboo. Hill reported to police officers that a short black male wearing a ski mask pointed a silver pistol at him. A black firearm found near the scene of the crime was registered to Brooks. Pittsburgh Police Officers Timothy Matson and Dustin Rummel ("Rummel") saw a man fitting the description provided by Hill near Club Taboo. A key to a Brooks' to a white Chevy Tahoe was found in the path on which the black male ran from Rummel. Brooks' white Chevy Tahoe was found near Club Taboo. The vehicle was registered to Squires and contained Brooks' wallet and the license plate that was on the vehicle on April 29, 2015, during the shooting at Johnson's house. Hill could not be located to testify at Brooks' trial with respect to this incident. (ECF No. 74 ¶¶ 26-41).

- On July 23, 2017, Brooks held a pistol to Tia Collins' head and then knocked her unconscious with the pistol. (H.T. 7/10/2018 (ECF No. 67) at 6.) Two shots were fired after Cordell Collins, Tia Collins' husband, arrived on scene. (Id. at 9.) Shortly after a 9-1-1 call was placed, police officer Adam Lawrence ("Lawrence") witnessed a gray sedan with an Ohio license plate being driven erratically from the direction of the Collins' residence. (Id. at 20-24.) Lawrence attempted to follow the vehicle, but lost sight of it because its taillights were not on. (Id. at 26.) A few minutes later, the Verona police located a crashed gray sedan with an Ohio license plate. (H.T. 7/10/2018 (ECF No. 67) at 27.) The following items, among others, were found inside the vehicle: two firearms registered to Brooks; Tia Collins' firearm (which she reported was stolen during the robbery); paperwork for firearms in Brooks' name and address; retail reward cards in Squires' name; Brooks' wallet, including his driver's

license and credit cards; and a cellular telephone registered to Brooks. (ECF No. 74 ¶¶ 79-92.)

With respect to the offense charged against Brooks in the indictment in this case, evidence shows that Brooks, a felon, possessed three firearms and ammunition. Duthinh executed a search warrant at 1204 Wade Street in Aliquippa, Pennsylvania. (H.T. 7/10/2018 (ECF No. 67) at 60.) The search warrant was a part of the investigation of the July 23, 2017 robbery at the Collins' residence. (Id. at 69.) Duthinh believed Brooks and his girlfriend, Squires, lived at 1204 Wade Street in Aliquippa, Pennsylvania. (Id. at 60-61.)

Brooks, Squires, and their two children were present at the residence when the search warrant was served. (Id. at 61.) Mail addressed to Brooks and Squires was found in the home. (Id.) Three firearms were recovered from the home. (H.T. 7/10/2018 (ECF No. 67) at 61.) A "Glock model 26, serial No. RLE509" and a "Glock model 43, serial No. BDYW586" were found in the closet of the master bedroom of the home, and a "Smith & Wesson rifle, serial No. TF39028" was found in the basement of the home. (Id. at 61-62.) Photographs were taken of the firearms in the areas in which they were initially located. (Id. at 62.)

The "Glock model 26, serial No. RLE509" was registered to Brooks' mother. (H.T. 7/10/2018 (ECF No. 67) at 66.) The "Glock model 43, serial No. BDYW586" and the "Smith & Wesson rifle, serial No. TF39028" were registered to Squires. (Id.) Various caliber ammunition, a quantity of marijuana, two digital scales, and "[a] number of gun boxes" were also seized from the residence. (Id. at 66, 68.) One of the gun boxes was for a Taurus brand pistol with serial number TG043889, that was registered to Brooks and recovered on May 5, 2015, during the attempted robbery at Taboo Nightclub. (Id. at 67-68.) The Taurus pistol with serial number TG043889 was not reported stolen to law enforcement. (Id.)

Duthinh testified that Brooks told him where two firearms were located in the house. (H.T. 9/8/2017 (ECF No. 25 at 5-6.) Brooks told Duthinh he would find a "pistol in the [master] bedroom closet and a rifle in the basement underneath the stairs." (Id. at 5-6.) Two pistols were recovered from the master bedroom closet and a rifle was recovered from underneath the stairs in the basement. (Id. at 6.)

## II. Standard of Review

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## III. Discussion

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

In this case, the parties agree that the rebuttable presumption in 18 U.S.C. § 3142(e)(3) does not apply, and the government does not argue that Brooks is a risk of flight. The government must demonstrate danger to the community justifying pretrial detention by the clear and convincing standard. United States v. Himler, 797 F.2d 156, 160-61 (3d Cir. 1986). "The

Third Circuit [Court of Appeals] has defined 'clear and convincing' evidence as follows: '[The witnesses'] testimony [must be] so clear, direct, weighty, and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue....'" United States v. Dominguez, No. CRIM. A. 97-175-03, 1999 WL 79569, at *2 (E.D. Pa. Feb. 9, 1999) (quoting United States Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir.1985)). Circumstantial evidence may be sufficient to meet the clear and convincing evidence standard. Dwumaah v. Attorney Gen. of U.S., 609 F.3d 586, 588 (3d Cir. 2010).

The court must weigh the four factors set forth in § 3142(g) in determining whether pretrial detention is warranted. The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Here, Brooks argues that the length of his pretrial detention requires the court to review the magistrate judge's "detention order and set an order releasing him on conditions." (ECF No. 76 ¶ 8.) The Third Circuit Court of Appeals has explained: "[A]t some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986). The court instructed that "due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits." Id. The court must also consider "such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." Id.

The court will, therefore, consider the § 3142 factors along with the Accetturo factors to determine whether: Brooks should continue to be detained pending trial.

### A. Nature and circumstances of the offense charged

The first factor set forth in § 3142(g) requires the court to consider whether the offense charged involves certain categories of conduct, including whether the offense charged involves a firearm. Brooks is charged in this case with possession of a firearm and ammunition by a convicted felon. This factor, therefore, weighs against him.

### B. Weight of the Evidence

The evidence adduced about the instant offense is clear and convincing. As a convicted felon under § 922(g)(1), Brooks is prohibited from possessing a firearm and ammunition. Agents recovered from his home three firearms and various calibers of ammunition. One of the firearms

was registered to Brooks and the another firearm was registered to Squires. Brooks told Duthinh the exact location in which he would find two of the three firearms. The weight of the evidence that Brooks—a convicted felon under § 922(g)(1)—possessed a firearm is, therefore, strong. This factor weighs against Brooks' release pending trial.

### C. History and Characteristics of the Person

Brooks has strong ties to the Western District of Pennsylvania. He has lived here his entire life and his family, including Squires and his two minor children, live here. These facts, however, are not dispositive. United States v. Matthias, Crim. Action No. 2016-0025, 2017 WL 1536430, at *17 (D.V.I. Apr. 27, 2017) (noting the limited weight that strong family ties have on the court's assessment of danger to the community in a case involving firearms given other relevant factors). Brooks has had several interactions with law enforcement, but does not have a substantial criminal history of convictions. This factor, therefore, is neutral in the court's analysis.

### D. Nature and Seriousness of the Danger to the Community

While Brooks does not have a serious or lengthy criminal history, the government proved by clear and convincing evidence that he has a history of illegally possessing a firearm and of firearm violence. It is undisputed that Brooks was previously convicted of possessing a firearm without a license. The evidence adduced about the April 19, 2015 incident meets the clear and convincing evidence standard. Eyewitnesses to that event testified that a neighbor of Johnson pointed a firearm at Johnson and shot a vehicle. The circumstantial evidence clearly showed that Brooks was the neighbor. Brooks was arrested for that conduct and the case was nolle prossed when Johnson and Clark did not appear to testify at the trial. Johnson credibly testified that she did not appear because she was afraid of Brooks. The testimony of Duthinh

about the instant offense, which is clear and convincing, showed that on the day law enforcement executed a search warrant at Brooks' home, he told Duthinh the exact locations of two firearms in his home.[2] (H.T. 9/8/2017 (ECF No. 25 at 5-6.) Based upon the foregoing, the court is constrained to conclude that if released from pretrial detention Brooks is likely to access a firearm and engage in dangerous and violent behavior. In other words, there are no conditions of release that would ensure the safety of the community and prevent Brooks from obtaining a firearm and engaging in acts of gun violence. This factor weighs strongly against Brooks' release pending trial.

### E. Length of the Detention, The Complexity of the Case and Whether the Strategy of One Side or the Other Added Needlessly to that Complexity

"The length of the detention is critical due to the 'crucial liberty interest at stake.'" United States v. Gatto, 750 F.Supp. 664, 675 (D.N.J. 1990) (quoting United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986)). On the other hand, "'the length of a detention period will rarely by itself offend due process.'" United States v. Hodge, No. CR 2016-0009, 2018 WL 1123866, at *8 (D.V.I. Feb. 23, 2018) (quoting United States v. Orena, 986 F.2d 628 (2d Cir. 1993)). The court in Hodge explained:

> After consideration of the relevant factors under the circumstances presented, courts have found pretrial detention periods as long as **forty-one months**, United States v. Casas, 425 F.3d 23, 34 (1st Cir. 2005), **thirty to thirty-three months**, United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000), and **thirty-two months**, United States v. Melendez-Carrion, 820 F.2d 56, 60-61 (2d Cir. 1987), to be constitutional.

---

[2] The evidence presented by the government with respect to incidents on May 5, 2015, and July 23, 2017, did not meet the clear and convincing evidence standard. While the circumstantial evidence relied upon to identify Brooks as an actor in those incidents was sufficient to satisfy the preponderance of the evidence standard, it did not satisfy the clear and convincing evidence standard. The court, therefore, will not consider this evidence to determine whether Brooks should be released pending trial.

Hodge, 2018 WL 1123866, at *8 (holding that the defendant's detention of **twenty-nine months** was constitutional because of the complexity of the case and the delay caused by, among other things, the defendant's untimely discovery disclosures); see United States v. Lloyd, Crim. Action No. 13-252, 2015 WL 6823754, at *1 n.1 (W.D. Pa. Nov. 6, 2015) (holding that a pretrial detention period of **twenty months** did not violate the defendant's due process rights because, among other things, "he requested a continuance or otherwise caused the delay of trial in this matter for eighteen of the twenty months of his incarceration"); United States v. Harris, Crim. Action No. 09-305, 2011 WL 1660573, at *6 (W.D. Pa. May 3, 2011) (holding a due process violation did not arise from the defendant's pretrial detention of **nineteen months** where the majority of the delay was caused by the defendant's codefendants' requests for extension of time to file pretrial motions).

Here, the extent of the delay in this case, in which Brooks is the sole defendant, was largely caused by the significant and complex legal issues raised by Brooks in his motion to dismiss the indictment.[3] Brooks' constitutional attack on § 922(g)(1) as applied to him implicated the fractured decision of the Third Circuit Court of Appeals in Binderup. Supplemental briefing was required by the court to determine how to apply that decision to the unique facts of this case. The thirty-day extension sought by the government was for the purpose of receiving input from the Department of Justice on the procedural issues raised by the court. As

---

[3] Other delays were caused by Brooks, who requested an extension of time to file pretrial motions, filed and then withdrew a motion for pretrial discovery, requested a continuance of the hearing on pretrial motions, and filed a supplement to the suppression motion, which required additional time for the government to respond.

the court held, the significant and important issues raised by Brooks' constitutional attack on § 922(g)(1) as applied to him warranted the thirty-day delay.

Based upon the foregoing, the delay in this case was warranted and was largely caused by the complexity of the legal issues raised by Brooks in his motion to dismiss the indictment. The court is now awaiting the parties' proposed findings of fact and conclusions of law with respect to the motion to suppress evidence and will resolve that motion within the proper time constraints. The Accetturo factors, therefore, weigh in favor of denying Brooks' motion for release.

**F. Conclusion**

Considering the nature of Brooks' offense, the weight of the evidence against him, and the danger he poses to the community, the government met its burden by clear and convincing evidence to show that there is no condition or set of conditions which would reasonably assure that defendant would not pose a danger to the community while on release pending trial. The complexity of the legal issues raised by Brooks' motion to dismiss the indictment warranted most of the delay in this case, and other delays were attributable to Brooks. Under those circumstances, Brooks' due process rights were not violated by his continuous incarceration. The court will resolve Brooks' motion to suppress and the case will proceed in an expeditious manner.

The motion for release from custody (ECF No. 76) will be denied. An appropriate order will be entered.

BY THE COURT,

Dated: November 13, 2018

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge